IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DARREN PEAD,<br><br>　　Plaintiff,<br><br>　　vs.<br><br>EPHRAIM CITY, a political subdivision of the State of Utah, and BRANT HANSON, an individual,<br><br>　　Defendants. | MEMORANDUM DECISION AND ORDER<br><br><br>Case No. 2:17-cv-1313<br><br>Judge Dee Benson |

This matter is before the court on Defendants Ephraim City and Brant Hanson's (collectively "Defendants") Motion to Dismiss Plaintiff's Complaint. (Dkt. 7.) At oral argument on the motion, Defendants were represented by Nathan Skeen. Plaintiff Darren Pead was represented by Kathryn Harstad and Cameron Platt. At the conclusion of the hearing, the court took the matter under advisement. Now, having further considered the law and facts relating to the motions, the court renders the following Memorandum Decision and Order.

**BACKGROUND**

Plaintiff Darren Pead is a police officer who was at all times relevant to this case employed by Ephraim City. In this lawsuit, Plaintiff seeks to recover from Ephraim City and its

City Manager, Brant Hanson, for taking adverse action against him after he and other officers reported what they claimed was illegal misconduct by their Chief of Police and sergeant. The relevant facts, as set forth in Plaintiff's complaint, are summarized as follows.[1]

According to Plaintiff, while working as an officer for the Ephraim City Police Department, Plaintiff discovered that Chief of Police Ron Rasmussen had failed to fill out or complete hundreds of police reports, dating back as far as 2008, in violation of city policy and law enforcement practices. Additionally, Plaintiff noticed that Sergeant Len Gasser had approved and "cleared" hundreds of Chief Rasmussen's blank reports, and "[a]s a result of Chief Rasmussen's and Sgt. Gasser's illegal misconduct, hundreds of reported crimes had gone undocumented and un-investigated." (Compl. ¶¶ 20-22.)

Upon discovering this, Plaintiff and two other officers met with the Ephraim City Council and mayor to report the illegal misconduct of Chief Rasmussen and Sgt. Gasser. Additionally, one of the other two officers reported the illegal misconduct to the Utah Attorney General's Office. (Compl. ¶¶ 23-25.)

Thereafter, the mayor and Defendant Hanson, in his capacity as the city manager, interviewed all three of the officers concerning the allegations. During the meeting, Plaintiff opined that Chief Rasmussen's conduct was a violation of Utah Code Section 76-8-201, and Plaintiff further asserted that this was an issue of "negligence and neglect" wherein hundreds of crimes against Ephraim City citizens had not been investigated. (Compl. ¶ 30.)

---

[1] In reviewing a motion to dismiss, the court must accept the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

Plaintiff claims that during the meeting, and in response to these accusations, Defendant Hanson threatened to "eliminate all personnel from the police department because the officers had 'elevated' the problem by contacting the AG's Office." (Compl. ¶ 28(a).) Defendant Hanson also said that he was "concerned about insubordination," and he questioned Plaintiff's "code of ethics," noting that the Chief had been with the City for 27 years and was "a member of this family." (Compl. ¶ 28( c).) Defendant Hanson told Plaintiff and the other officers that in response to the allegations he would enlist the Utah County Sheriff's Office to do an internal investigation, but advised that the investigation would "tap into everybody a little bit," including Plaintiff and the other reporting officers. (Compl. ¶ 32.)

According to Plaintiff, the Utah County investigation directed very little attention to Chief Rasmussen and Sgt. Gasser, but focused instead on Plaintiff and his behavior at the Ephraim Police Department. (Compl. ¶¶ 36, 40.) Additionally, the Utah County investigative report, which was later leaked to the media, cast Plaintiff in a negative light stating that "[i]nformation and evidence was obtained showing that Officer Pead is and has been insubordinate on several occasions" and accused Plaintiff of being "unprofessional in his conduct." (Compl. ¶ 48.) Additionally, Plaintiff claims that the City issued statements to the press downplaying Chief Rasmussen's and Sgt. Gasser's misconduct, and disparaging Plaintiff and the other two officers, asserting that their allegations were "unverifiable" and "purely speculative." (Compl. ¶ 51.)

Based on what they perceived were retaliatory actions, and because they were "unwilling to endure illegal conduct by the Chief and Sergeant and the resulting coverup," on June 28,

3

2017, Plaintiff and the other two officers resigned from the police department. (Compl. ¶ 52.)

On December 26, 2017, Plaintiff filed suit in federal court asserting two causes of action. First, Plaintiff asserts a claim under federal law, pursuant to 42 U.S.C. § 1983, claiming that Defendants retaliated against him for exercising his First Amendment right to free speech. Second, Plaintiff asserts a claim under state law against defendant Ephraim City for violating the Utah Protection of Public Employees Act, Utah Code Ann. § 67-21-1, et seq. ("the Utah Whistleblower's Act").

## DISCUSSION

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege facts that, if true, "state a claim to relief that is plausible on its face." *Wilson v. Montano*, 715 F.3d 846, 852 (10th Cir. 2013); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must accept all well-pleaded allegations in the complaint as true and "construe them in the light most favorable to the plaintiff." *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011). Applying this standard, the court addresses each cause of action in turn.

1. <u>Section 1983 Claim – Retaliation Based on the Exercise of Free Speech Protected by the First Amendment</u>

First, Plaintiff claims that Defendants violated his First Amendment right to free speech when they retaliated against him after he "repeatedly reported Chief Rasmussen's and Sgt. Gasser's illegal misconduct." (Compl. ¶70.)

In *Garcetti v. Ceballos*, the Supreme Court reaffirmed that "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing

matters of public concern." 547 U.S. 410, 417 (2006). The *Garcetti* Court recognized the inherent tension between an employee's right to free speech and the government employer's right to exercise 'a significant degree of control over their employees' words and actions,' and concluded that 'while the First Amendment invests public employees with certain rights, it does not empower them to constitutionalize the employee grievance.'" *Rohrbough v. University of Colorado Hosp. Auth.*, 596 F.3d 741, 745 (10th Cir. 2010) (quoting *Garcetti*, 547 U.S. at 418); *see Lane v. Franks*, 134 S.Ct. 2369, 2374 (2014) ("[T]he First Amendment protection of a public employee's speech depends on a careful balance between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.").

To balance these competing interests, freedom of speech retaliation claims are governed by a five-step inquiry referred to as the *Garcetti/Pickering* analysis. *Nixon v. City & County of Denver*, 784 F.3d 1364, 1367 (10th Cir. 2015). Under this analysis, the court must consider:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interest, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Helget v. City of Hays*, 844 F.3d 1216, 1221 (10th Cir. 2017). The first three steps are to be decided as a matter of law by the district court. The last two steps are ordinarily for the trier of fact. *Id.* at 1222. In this case, Plaintiff's freedom of speech retaliation claim can be decided at

the first step because the court concludes, as a matter of law, that Plaintiff Pead's statements were made pursuant to his official duties.

### Speech Pursuant to Official Duties

It is well-established that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the constitution does not insulate their communication from employer discipline." *Seifert v. Unified Government of Wyandotte County*, 779 F.3d 1141, 1151 (10th Cir. 2015). The United States Court of Appeals for the Tenth Circuit has "taken a broad view of the meaning of speech that is pursuant to an employee's official duties." *Chavez-Rodriguez v. City of Santa Fe*, 596 F.3d 708, 713 (10th Cir. 2010). The critical question under *Garcetti* is whether the speech at issue is ordinarily "within the scope of an employee's duties," and speech falls within the scope of an employee's duties if it involves "the type of activities that the employee was paid to do." *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018) (quoting *Lane*, 134 S.Ct. 2379)*; see also Chavez-Rodriguez v. City of Santa Fe*, 596 F.3d 708, 713 (10th Cir. 2010) ("[I]f an employee engages in speech during the course of performing an official duty and the speech reasonably contributes or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties.").

No bright-line rule governs when employees are speaking as part of their official duties. *Lincoln v. Maketa*, 880 F.3d 533, 538 (10th Cir. 2018). Therefore, courts are instructed to, on a case by case basis, "take a practical view of all the facts and circumstances surrounding the speech and the employment relationship." *Knopf*, 884 F.3d at 946 (10th Cir. 2018) (quoting

*Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1204 (10th Cir. 2007)). Many facts may be relevant, including the tasks in an employee's job description, the frequency with which an employee performs a task, the subject matter of the employee's speech, the recipient of the speech, and the legal obligation for the employee to speak. *Id.* However, no one factor is determinative. *Id.* (*citing Brammer-Hoelter*, 492 F.3d at 1203 (job description not dispositive); *Holub v. Gdowski*, 802 F.3d 1149, 1156 (10th Cir. 2015) (frequency of performance is not dispositive); *Lane*, 134 S.Ct. at 2379 (speech made about work is not dispositive); *Rohrbough v. University of Colorado Hosp. Auth.*, 596 F.3d 741, 747 (10th Cir. 2010) (speech made outside chain of command is not dispositive)). Ultimately, the court must ask whether the employee was performing the task they were paid to perform when they spoke. *Id.* "If so, the 'speech was therefore commissioned by his employer,' and it enjoys no First Amendment protection. *Knopf*, 884 F.3d at 946 (quoting *Thomas v. City of Blanchard*, 548 F.3d 1317, 1323 (10th Cir. 2008)).

In this case, Plaintiff Pead, employed as a police officer, was responsible for investigating criminal conduct. Specifically, Plaintiff's primary duties consisted of "the prevention and detection of crime and the enforcement of criminal statutes and ordinances." Utah Code Ann. § 53-13-103(a). While working as a police officer, Plaintiff discovered evidence of what he considered to be criminal conduct committed by his superiors, and after discovering this misconduct he and others reported it to the Ephraim City Council, the mayor, and the Public Corruption Division of the Utah Attorney General's Office. *See* Compl. ¶¶ 2, 20-27. Plaintiff's purpose in reporting the misconduct was to initiate an investigation into what he believed was illegal behavior, and in so reporting, Plaintiff identified a specific criminal statute

7

he believed had been violated. (Compl. ¶ 27.)

That Plaintiff was not specifically tasked with conducting internal affairs investigations of his supervisors does not alter the court's conclusion. Speech may fall within an employee's official duties even if it concerns an unusual aspect of the employee's job, and even if it is not explicitly required as part of the employee's day-to-day responsibilities. *See Brammer-Hoelter*, 492 F.3d at 1203; *Green*, 472 F.3d at 800-01; *see also Joyce v. North Metro Task Force*, 2011 WL 2669162 (D. Colo. July 7, 2011) (unpublished) ("There is some support in the law to conclude that, based on this general duty, a police officer speaks pursuant to his official duties when he speaks about criminal activity of any kind."). Similarly, that Plaintiff reported the illegal misconduct to individuals outside his chain of command does not automatically or necessarily render his speech outside his official duties. *See Rohrbough*, 596 F.3d at 747; *see also Cheek v. City of Edwardsville, Kansas*, 324 F. App'x 699 (10th Cir. 2008) (concluding plaintiff officer's speech was pursuant to official duties even though officer reported to outside agency). The proper focus remains whether the speech involved the type of activities the employee was paid to do.

In light of the applicable legal standards and the specific facts and circumstances of this case, the court concludes that Plaintiff Pead's reporting of what he believed was illegal conduct was precisely the type of activity he was paid to perform and therefore within his official duties. Accordingly, Plaintiff's First Amendment freedom of speech claim pursuant to § 1983 fails as a matter of law, and Defendants' motion to dismiss this claim is granted.

2. <u>Utah Whistleblower's Act Claim</u>

Second, Plaintiff claims that Defendant Ephraim City violated the Utah Protection of Public Employees Act, Utah Code Ann. § 67-21-1, *et seq.* ("the Utah Whistleblower's Act"). However, under 28 U.S.C. § 1367(c)(3) a district court may decline to exercise supplemental jurisdiction over state law claims if the court has dismissed all claims over which it had original jurisdiction. Having granted Defendants' motion to dismiss Plaintiff's federal claim, the court declines to exercise supplemental jurisdiction over Plaintiff's state law claim and dismisses the state-law claim without prejudice. *See Board of County Commissioners of Sweetwater County v. Geringer*, 297 F.3d 1108 (10th Cir. 2002) ("The district court's ruling [in which it declined to review the state-law claims], comports with our general admonishment that district courts should dismiss state claims without prejudice after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial.").

## CONCLUSION

For the reasons stated, the court GRANTS Defendants' motion to dismiss the federal cause of action under 42 U.S.C. § 1983, asserting first amendment retaliation, and dismisses the federal claim with prejudice. The court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim under the Utah Whistleblower's Act, and the state law claim is therefore dismissed without prejudice.

DATED this 12th day of December, 2018.

_____
Dee Benson
United States District Judge